**Dorothy S. MARKS, Plaintiff,**

**v.**

**Irwin LAINOFF, Barry Hirsch, Raymond H. Lapin, William E. Rulon, Albert C. Lasher, CNA Management Corporation, Neuberger & Berman Management Incorporated, Neuberger & Berman, Angeles Realty Corporation and CL Assets, Inc., Defendants.**

**No. 79 Civ. 0733 (KTD).**

United States District Court, S. D. New York.

Feb. 23, 1979.

Pomerantz, Levy, Haudek & Block, New York City, for plaintiff; Stanley M. Grossman, Marc I. Gross, New York City, of counsel.

Willkie, Farr & Gallagher, New York City, for defendants Irwin Lainoff, Barry Hirsch, Raymond H. Lapin, William E. Rulon, Albert C. Lasher and CL Assets, Inc.; Chester J. Straub, Michael Lambert, New York City, of counsel.

Henry L. Wolff, New York City, of counsel, for defendant CNA Management Corp.

Wachtell, Lipton, Rosen & Katz, New York City, for defendants Neuberger & Berman Management Inc., and Neuberger & Berman; Steven M. Barna, New York City, of counsel.

### OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

■ In this most unusual securities law case, the plaintiff, a preferred stockholder in CL Assets, Inc. ["CL"], a closed-end investment company, seeks a preliminary injunction to enjoin a special meeting of stockholders scheduled for February 27, 1979, at which meeting a plan of reorganization proposed by the directors to the preferred and common shareholders of the CL is to be voted upon. Plaintiff contends that this reorganization is manifestly unfair to the preferred shareholders, and, as such, is violative of the Investment Company Act, 15 U.S.C. § 80a–1 *et seq.* There are no allegations of fraud, and, to date no real attempt has been made to show any breach of fiduciary duty in the context of adequacy of disclosure, self-dealing, conflict of interest or gross negligence.[1]

---

1. At the hearing it was brought to my attention that plaintiff intends to amend her complaint to allege violations of Section 14(a) of the Securities and Exchange Act of 1934 and Rule 14a–9 thereunder. Although a formal amendment has not yet been made, nor has leave of Court to amend been sought, I note that such a claim appears to be without merit. Plaintiff suggests that defendants omitted from the proxy materials the fact that Neuberger & Berman, the largest owner of CL's preference shares, will benefit from the reorganization plan because it will

The facts herein are quite simple: CL was organized in 1972 under the sponsorship of CNA Financial Corporation ["CNA"] to invest primarily in the securities of Real Estate and Investment Trusts ["REITs"]. The company's organized capital consists of two classes of stock with different rights. The preferred stock holders are entitled to dividends of $2.10 per year on a cumulative basis with a liquidation preference in 1987 of at least $25 per share. The common stockholders may receive a dividend only if, after payment thereof, the net assets of CL are equal to at least 200 per cent in value of the then current liquidation preference of the preferred stock. Both classes of stock enjoy equal voting privileges and vote as one class except in major corporate matters. Additionally, if the preferred stockholders suffer dividend arrearages in an amount equal to two full years' dividends, these shareholders have the right to elect a majority of the directors.

Shortly after the first year that the dividends were paid, it became obvious that CL would not have the glowing future hoped for by its promoters and shareholders and particularly that the entire preferred dividend could not be paid on a yearly basis. As early as 1975, when CNA Management Corp. became investment advisors to CL, the shareholders approved a change in the investment objectives of the fund so that up to 75 per cent thereof could be invested in non-REIT securities.

Faced with the realities of the market place, the CL Board of Directors began considering ways in which the Fund might be turned around. Among the alternatives contemplated was the reorganization plan which plaintiff opposes. Pursuant to this plan a new class of 10,000,000 shares of

common stock will be authorized and shares of the common and preferred stock currently owned will be converted into the new common stock. Preferred shareholders will receive 2.5360231 new shares for each preferred old share. Common stockholders will receive .15613981 new shares for each old share. Accumulated arrearages of preferred stock will be cancelled. Furthermore, investment policies will be changed to permit a more diversified investment portfolio and to convert the sub-classification of the Fund, effective April 30, 1981, from a closed-end company to an open-end one.

As a result of the recapitalization there will be 2,000,000 shares of new common stock outstanding of which 88 per cent will be held by former holders of preferred stock and 12 per cent by former holders of common stock. Plaintiff contends that this reorganization is inherently unfair to preferred stockholders in that it reduces the net asset value of each preferred share while significantly increasing the net asset value of each common share and compels preferred shareholders to surrender their senior status and their right to a fixed dividend and liquidation in eight years.

In opposing the motion for a preliminary injunction certain of the defendants have moved, pursuant to Fed.R.Civ.P. 12(b)(1) and (6) to dismiss the complaint. In a lengthy memorandum of law submitted the day before the hearing, they advance a number of reasons why they believe that the Court lacks subject matter jurisdiction and or that plaintiff fails to state a claim cognizable under the securities laws. While the issues thus raised deserve my attention, because of the urgent nature of this motion, and because plaintiff has not yet responded to defendants' motion, I will defer ruling on

---

make the merger of CL with another investment group easier and that such a merger is contemplated. Yet, the record before the Court, on which plaintiff bases her claims, reveals that Neuberger & Berman has merely conducted an investigation into the ways to take advantage of CL's tax loss carry forward. Although a merger may have been discussed, no plan was advanced and, to the knowledge of CL's president, no plan is contemplated. Lainoff Dep. at 83, 86–87.

Section 14 carries with it no formal requirement that predictions be made as to future behavior, see *Susquehanna Corp. v. Pan American Sulpher Co.*, 423 F.2d 1075 (5th Cir. 1970), and indeed, they are discouraged, *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 948 (2d Cir. 1969). Since in this case the merger plans appear to be vague and indefinite at best, plaintiff's effort to allege a violation of the proxy rules cannot be sustained.

the motion to dismiss until a later date. At this juncture, I will address myself solely to the motion for preliminary relief.

■ Although there is little need to repeat the well-recognized criteria which must be met before a preliminary injunction will issue, in the interest of completeness I will state them once more. It is the movant's burden to show that absent this extraordinary relief there is a possibility of irreparable injury and that either (i) she will probably succeed on the merits; or (ii) there are sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tips decidedly in the movant's favor. *Caulfield v. Board of Education*, 583 F.2d 605, 610 (2d Cir. 1978).

■ The threshold question is that of irreparable harm. No evidence of such possible injury has been presented other than conclusory statements in plaintiff's attorney's affidavit that conversion of preferred stock into common stock will irreparably damage the preferred stockholders. According to plaintiff's attorney, once the exchange is effected "unscrambling the eggs will be far more difficult than preserving the status quo." Page 5, Affidavit of Richard Meyer, February 13, 1979. However, the fact that the unscrambling may be more difficult clearly does not constitute the necessary showing of irreparable harm. If irreparable injury means anything it means that the harm done cannot be repaired. This is certainly not what would occur in the case at bar. Were the reorganization to be approved and then ultimately found to be unfair it would be quite easy to reconstruct the company's capitalization. Since the change from a closed-end fund to an open-end fund will not take place until 1981, there is every likelihood that, upon resolution of this action, the shareholders will be the same as they are today and can be restored to their prior status. Substantially nothing will be lost by the preferred shareholders since they are currently receiving little or nothing on their investment, and, in any event, it is not until 1987 that they can hope to realize their liquidation preference under the plan that is presently in effect.

Since I have found that no irreparable injury will result if shareholders' meeting proceeds on schedule, I need not decide whether the remaining criteria for granting preliminary relief have been met. However, I believe it is worth noting that plaintiff has failed to prevail on either of these grounds as well. In my view, there has been no showing of a likelihood of success on the merits. Although plaintiff's expert testified that he would value the common shares in a manner different than did the Board of Directors, I remain unconvinced that the manner employed by defendants was not fair and reasonable. On the contrary, the evidence presented to date would lead me to conclude that the Board acted with due care, considered the alternatives and gave a great deal of thought to the plan which they would recommend to shareholders. Since 1974 the Board has been considering how to effect the corporation's turn-around. This obvious considered deliberation is in itself some evidence of their good faith and the due care exercised. It appears that the Board took into account the fairness to both classes of shareholders and came up with a plan that they believed would benefit both the fund and the shareholders alike.

Even if it could be said that plaintiff's proof raises substantial questions going to the merits to make them a fair ground for litigation, I do not believe that the balance of hardships tips decidedly in her favor. As I have already noted, she will suffer no immediate harm as a result of the recapitalization and should she ultimately succeed on the merits she can be restored to her present status. By contrast, if the injunction enters defendants will be forced to delay their efforts to revitalize the company which may well result in harm to it. Moreover, they will incur certain disabilities under the Securities Laws should the injunction issue [2] and will, of course, be put to the

2. *See, e. g.*, Rule 252(d)(2), Securities Act of 1933, 17 C.F.R. § 230.252(d)(2).

expense of notifying their shareholders of the action and then re-issuing the proxies should they ultimately prevail on the merits. This is an expense which the company can ill afford.

One further matter requires my attention. At the hearing held on this motion an attorney appeared representing Galdi Securities Corporation, the owner of the second largest block of preferred shares. He asked that I delay the meeting so that he might have the Board distribute a letter opposing the reorganization. The Board has apparently been willing to mail Galdi's comments. However, to date it has not received the proposed mailing. In view of the fact that the proxy solicitation has been outstanding since January 19, 1979, and the Board has already adjourned the meeting once, I see no need for further delay.

Based upon the foregoing, the application for a preliminary injunction is denied. Plaintiff is directed to submit papers opposing the motion to dismiss by March 20, 1979.

SO ORDERED.